**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------

|  |  |  |
|---|---|---|
| | : | |
| CARDOW, INC., | : | |
| | : | Civil Action No. 09-cv-6943-SCR |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| JEFFREY BERKOWITZ and | : | |
| JOE R. TANORY, JR, | : | |
| | : | ECF Case |
| Defendants. | : | |

------------------------------------------------------   <u>JURY TRIAL DEMANDED</u>

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Plaintiff Cardow, Inc. ("Cardow") for its Complaint against defendants Jeffrey Berkowitz and Joe R. Tanory, Jr. ("Defendants), through its attorneys undersigned, alleges as follows:

### <u>JURIDICTION AND VENUE</u>

1.      This is an action for declaratory relief for which this Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201(a) and 2202 and the patent laws of the United States, 35 U.S.C. § 271, *et seq.*

2.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b) because defendant Jeffrey Berkowitz resides in this judicial district and there is no district in which this action may otherwise be brought and also because defendant Joe R. Tanory, Jr. may be found in this judicial district and further is subject to personal jurisdiction of this Court.

3.      Cardow is a United States Virgin Islands corporation having its principal place of business at 39 Dronningens Gade (Main Street), Charlotte Amalie, St, Thomas, United States Virgin Islands, 0802-6497.

4.     Upon information and belief, defendant Berkowitz is an individual residing in the State of New York and defendant Tanory is an individual residing in the State of Alabama who is subject to personal jurisdiction of the courts of this state by his engaging in acts by which he has purposefully availed himself of the privileges of conducting activities within this state and the claims herein asserted arise out of or result from defendant Tanory's activities in this state.

<u>**PRIOR LEGAL ACTION**</u>

5.     On May 12, 2009 plaintiff Cardow commenced a legal action against defendant Tanory styled *Cardow, Inc. v. Joe R. Tanory*, Civil Action No.09/68 in the United States District Court for the United States Virgin Islands, Division of St. Thomas and St. John seeking declaratory judgment of patent non-infringement and invalidity identical to claims asserted in this Complaint (the "Prior Legal Action").

6.     In the Prior Legal Action defendant Tanory has not yet filed an answer to Cardow's complaint and has filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) contending that defendant Tanory is not subject to personal jurisdiction of courts of the Virgin Islands.

7.     Prior to or simultaneously with the filing the instant Complaint, Cardow voluntarily has dismissed the Prior Legal Action without prejudice by filing a notice of dismissal with the clerk of court for United States District Court for the Virgin Islands.

**FIRST CLAIM FOR RELIEF**

<u>**PATENT NON-INFRINGEMENT**</u>

8.     In a written communication dated April 28, 2009 to plaintiff Cardow from defendant Tanory's attorneys and agents, Maynard Cooper & Gale, PC, and received by Cardow at its offices in St. Thomas, United States Virgin Islands, Tanory purported to be owner of

United States Patent No. 5,353,608 entitled *Multi-Use Jewelry Piece* (the "'608 Patent") and United States Patent No. D374,410 entitled *Finger Ring* (the "'410 Patent").  A true and correct copy of said written communication is annexed to the Complaint as Appendix "A").

9.      Defendant Berkowitz is identified in the records of the United State Patent Office as a co-inventor and co-owner of the '608 Patent and thus is a party necessary to the just adjudication of this action.

10.      By the sending of the written communication annexed at Appendix "A", defendant Tanory has purported to put Cardow on notice of, and has asserted a claim for alleged infringement of the '608 Patent and the '410 Patent.

11.      As a result of defendant Tanory's actions and statements, an actual controversy within the meaning of 28 U.S.C. § 2201 now exists between Cardow and Tanory concerning infringement of the '608 Patent and the '410 Patent.

12.      Cardow has a real and reasonable apprehension that it would be subject to liability if it continues its present and planned business activities.

13.      Based on the foregoing allegations, there exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

14.      Cardow is entitled to judgment from this Court finding that its manufacturing, offering for sale, selling and using of certain of Cardow's "reversible" jewelry rings do not infringe the '608 Patent and/or the '410 Patent.

15.      This is an exceptional case within the provisions of 35 U.S.C. § 285 and Cardow is entitled to an award of its reasonable attorneys' fees.

### SECOND CLAIM FOR RELIEF

### <u>PATENT INVALIDITY</u>

3

16.     Cardow realleges and incorporates herein by this reference Paragraphs 1 through 15 of this Complaint as though fully set forth herein.

17.     Defendant Tanory has alleged in its written communication to Cardow dated April 28, 2009 that he is owner of the '608 Patent and the '410 Patent having issued from the United States Patent and Trademark Office.

18.     Defendant Berkowitz is identified in the records of the United State Patent Office as a co-inventor and co-owner of the '608 Patent and thus is a party necessary to the just adjudication of this action.

19.     Upon information and belief, either or both the '608 Patent and the '410 Patent is/are invalid because the inventions fail to satisfy the conditions for patentability specified in 35 U.S.C. § 101 *et seq*.

20.     As a result, the '608 Patent is invalid pursuant to 35 U.S.C. § 101 *et seq*.

21.     As a result, the '410 Patent is invalid pursuant to 35 U.S.C. § 101 *et seq*.

22.     As a result of defendant Tanory's actions and statements and as a result of defendants Tanory's and Berkowitz' joint invention and joint application to obtain the '608 Patent and their co-ownership of the '608 Patent, an actual controversy within the meaning of 28 U.S.C. § 2201 now exists between the parties regarding the invalidity of the '608 Patent and '410 Patent.

23.     Cardow has a real and reasonable apprehension that it would be subject to liability if it continues its present and planned business activities.

24.     Based on the foregoing allegations, there exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

25.     Cardow is entitled to judgment from this Court finding the '608 Patent and the '410 Patent invalid.

26.     This is an exceptional case within the provisions of 35 U.S.C. § 285 and Cardow is entitled to an award of its reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Cardow requests the following relief:

A.  That the Court declare that Cardow has not infringed, contributed to the infringement of, or induced the infringement of any valid claims of the '608 Patent and the '410 Patent, directly or indirectly, under any subsection of 35 U.S.C. §§ 271 *et seq*;

B.  That the Court declare the '608 Patent and the '410 Patent to be invalid;

C.  That the Court find this action to be an exceptional case entitling Cardow to an award of its attorneys' fees, expenses and costs pursuant to 35 U.S.C. § 285; and

D.  That the Court award Cardow such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: August 6, 2009
       New York, New York

_____

Joseph T. Murray (JM 3564)
*e-mail: jtm@hartbaxley.com*
Charles E. Baxley (CB 8486)
*e-mail: ceb@hartbaxley.com*

HART, BAXLEY, DANIELS & HOLTON
90 John Street – Suite 309
New York, NY 10038-3243
Tel. 212.791.7200
Fax. 646.225.7137

*Attorneys for Plaintiff*
*Cardow, Inc.*

Appendix "A"



**MAYNARD COOPER**
**& GALE PC**
ATTORNEYS AT LAW

C. Brandon Browning
DIRECT 205.254.1036
EMAIL   bbrowning@maynardcooper.com

April 28, 2009

**VIA REGISTERED MAIL**

Louis Delyrotz, President
Cardow, Inc.
39 Dronningens Gade
Charlotte Amalie, Virgin Islands  00802-6497

Re:   Reversible Rings

Dear Mr. Delyrotz:

This firm represents Joe R. Tanory, Jr.   Mr. Tanory is the owner of U.S. Patent No. 5,353,608, titled *Multi-Use Jewelry Piece* ("the '608 patent") and U.S. Patent No. D374,410, titled *Finger Ring* ("the '410 patent").  These patents are collectively referred to as the Tanory patents.  A copy of each of the Tanory patents is enclosed.

The Tanory patents are directed to a jewelry piece which is capable of selectively displaying one of two stones when used as a ring providing a single setting which carries two different stones with a pair of hoops.  The hoops are a pivotal around the setting above and below it and in opposite directions so that one of the two stones carried by the setting is selectively displayed when the item is worn by a user.

Specifically, the '410 patent claims the ornamental design of a finger ring as shown and described in the patent and generally described above.  The '608 patent claims a multi-use jewelry device that includes (i) a setting means for holding first and second separate and different display objects opposite each other and each with a portion thereof extending outwardly of said setting means, and (ii) first and second continuous hoops each with a truss extending radially outwardly therefrom, the trusses being connected to the setting means between the two display objects, each of the hoops is pivotable by substantially 180 degrees in opposite directions above and below the setting means to be adjacent to each other for selectively orienting the first and second display objects for selective display of the extending portion thereof.

Considering the claims of the Tanory patents, we investigated Cardow, Inc.'s line of reversible rings including Cardow's diamond, emerald, opal, tanzanite and ruby reversible rings ("Cardow rings").  Photographs of the Cardow rings are enclosed.

In particular, we a compared each of the Cardow rings to the rings depicted in the '410 patent.  We did so applying the "ordinary observer" test which is used to determine patent infringement.  Side by side, the Cardow rings appear nearly identical to the rings depicted in the

Louis Delyrotz, President
April 28, 2009
Page 2

'410 patent. Further, it is clear to us that whatever differences there may be between the parties' respective rings in details of ornament, they are still the same in general appearance and effect, so much alike that in the market and with purchasers they would pass for the same thing - so much alike that even persons in the trade would be in danger of being deceived. Accordingly, we believe that the Cardow rings embody the patented designs protected under the '410 patent.

We also compared each of the Cardow rings to the claims of the '608 patent. Based on the comparison, we concluded that each of the Cardow rings includes every feature required by one or more claims of the '608 patent to be covered thereby. Thus, we believe the Cardow rings include the claimed setting means, the claimed first and second continuous hoops and the claimed two display objects. As such, we believe the Cardow rings are covered by at least one of the claims of the '608 patent.

Since Cardow has offered for sale and continues to offer for sale reversible rings that appear to fall within the claims of both Tanory patents, Mr. Tanory desires to extend a license to Cardow under the Tanory patents so that Cardow can lawfully offer for sale and sell reversible rings. In consideration for such a license, Mr. Tanory is seeking a reasonable royalty.

Consistent with previous licensing arrangements, Mr. Tanory proposes a royalty equal to ten percent (10%) of the first $5 million of Cardow rings sales revenue and a royalty equal to fifteen percent (15%) of Cardow rings sales revenue that is in excess of $5 million. These rates would apply to the last six years of Cardow rings sales and all future Cardow rings sales. However, for purposes of calculating the first $5 million in sales, Cardow rings sales occurring prior to six years ago shall be included. Alternatively, Mr. Tanory proposes that Cardow pay a lump sum based upon its past Cardow rings sales plus provide Mr. Tanory the exclusive right to supply Cardow rings to Cardow until expiration of the '608 patent in 2013. The latter arrangement is similar to an agreement reached between Mr. Tanory and J.C. Penney Co, Inc. pursuant to a settlement of patent infringement claims brought by Mr. Tanory against J.C. Penney in *Tanory v. J.C. Penney Co., Inc.*, U.S. District Court for the Middle District of Alabama, Eastern Division, CV-99-C-247-E.

If Cardow wishes to obtain a license from Mr. Tanory, we ask that Cardow and its counsel contact us within a reasonable time of receiving this letter so that licensing negotiations can begin. If, on the other hand, Cardow does not wish to obtain a license under the Tanory patents, Cardow is hereby directed to cease and desist manufacturing, offering for sale, selling and using any reversible rings covered by the Tanory patents. If you are of the opinion that Cardow does not need a license from Mr. Tanory to lawfully manufacture, offer for sale or sell the Cardow rings, it would be helpful if you could give us some in sight into your reasons.



Louis Delyrotz, President
April 28, 2009
Page 3


We look forward to your response.

Very truly yours,

C. Brandon Browning
Attorney for Joe Tanory, Jr.

CBB:aar

Enclosures

MAYNARD COOPER
& GALE PC
ATTORNEYS AT LAW

01789668.1

Louis Delyrotz, President
April 28, 2009
Page 4


bc:    Joe Tanory

MAYNARD COOPER
& GALE PC
ATTORNEYS AT LAW

01789668.1



## United States Patent [19]

### Berkowitz

[11] **Patent Number:** **5,353,608**

[45] **Date of Patent:** **Oct. 11, 1994**

[54] **MULTI-USE JEWELRY PIECE**

[75] Inventor: **Jeffrey Berkowitz**, Brooklyn, N.Y.

[73] Assignee: **Dufonte Industries, Ltd**, Wacchai, Hong Kong

[21] Appl. No.: **2,267**

[22] Filed: **Jan. 8, 1993**

[51] Int. Cl.⁵ ............................................ **A44C 13/00**

[52] U.S. Cl. ........................................ **63/1.1;** 63/15; 63/31

[58] Field of Search ................ 63/15, 15.1, 15.2, 15.3, 63/15.4, 28, 29.2, 31, 1.1, 3, 12

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 211,558 | 1/1879 | Edwards | 63/15 |
| 252,998 | 1/1882 | Brunswick | 63/15 |
| 774,700 | 11/1904 | Schmidt . | |
| 1,099,733 | 6/1914 | Beetar . | |
| 2,048,878 | 7/1936 | Moldenhaver | 63/15 |
| 2,177,314 | 10/1939 | VonDachenhausen . | |
| 2,585,185 | 2/1952 | Stern | 63/15 |
| 3,263,446 | 8/1966 | Di Croce | 63/29.2 |
| 4,080,803 | 3/1978 | Suzuki . | |
| 4,165,621 | 8/1979 | Gould | 63/15 |
| 4,726,200 | 2/1988 | Carter . | |
| 4,733,544 | 3/1988 | Londaro | 63/15 |
| 4,841,746 | 6/1989 | Chen . | |
| 4,932,396 | 6/1990 | Garris | 63/15 |

**FOREIGN PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 547066 | 2/1922 | France | 63/12 |
| 896557 | 7/1943 | France | 63/15.1 |
| 1537955 | 8/1968 | France | 63/29.2 |
| 2291716 | 6/1976 | France | 63/15 |

*Primary Examiner*—Flemming Saether
*Attorney, Agent, or Firm*—Darby & Darby

[57] **ABSTRACT**

A multi-use jewelry device having a setting member for holding first and second display objects, such as gems or stones, in opposite facing directions. A pair of hoops are pivotally connected to said setting member and by rotating the hoops in opposite directions above and below the setting member, the hoops when lying adjacent one another form a body mounting members, such as a ring or bracelet with one of the display objects being displayed. The hoops also can have an ear fastening device so that an earring is provided when selectively displays one or the other of the objects when the device is fastened to the ear or they can have a member for accepting a chain so that the device can serve as a pendant. The hoops are held together by a magnet arrangement a the bottom of the hoops from the setting.

**10 Claims, 3 Drawing Sheets**





**U.S. Patent**    Oct. 11, 1994    Sheet 1 of 3    5,353,608



FIG. 1



FIG. 2A

FIG. 2B



FIG. 3A



FIG. 3B



FIG.  3C

FIG.  3D

FIG.  3E

FIG.  3F

FIG.  3G

FIG.  3H

FIG.  3I

# FIG. 4



# FIG. 5

# FIG. 6



5,353,608

1

## MULTI-USE JEWELRY PIECE

### BACKGROUND OF THE INVENTION

In various types of jewelry articles, it is sometimes desirable that the article have a plurality of uses or be capable of being configured in different ways for a different display of jewelry.

For example, in U.S. Pat. No. 4,841,746 to Chen a ring is displayed having a axle about which various ringlets pivot. Each ringlet carries a different stone. In U.S. Pat. No. 4,726,200 to Carter, a combined ring-pendant is disclosed in which a setting holder is rotated between a ring position and a pendant position. Further, in U.S. Pat. No. 4,080,803 to Suzaki, there is a central ring having a stone at the top thereof. Secondary rings can be snapped on each or both sides of the central ring, each of the secondary rings also carrying a stone to form a complete and different stone setting.

### OBJECT OF THE INVENTION

It is an object of the present invention to provide a multi-use jewelry piece using only one setting and which is capable of selectively displaying one of two stones or gems held thereon.

Another object is to provide a jewelry piece which is capable of selectively displaying one of two stones when used as a ring, bracelet, pendant, earring or stick-pin.

An additional object is to provide a multi-use piece of jewelry having a single setting which carries two different stones with a pair of hoops which are a pivotal around the setting above and below it and in opposite directions so that one of the two stones carried by the setting is selectively displayed when the item is worn by a user.

Another object is to provide a jewelry piece which is capable of selectively displaying one of two stones when used as a ring, bracelet, pendant, earring or stick-pin by providing a single setting which carries two different stones with a pair of hoops which are a pivotal around the setting above and below it and in opposite directions so that one of the two stones carried by the setting is selectively displayed when the item is worn by a user.

### BRIEF DESCRIPTION OF THE DRAWINGS

Other objects and advantages of the present invention will become more apparent upon reference to the following specification and annexed drawing in which:

FIG. 1 is a side view of the jewelry piece;

FIGS. 2A and 2B are views with the hoops spread apart showing each of the two different stones;

FIGS. 3A-3I show a series of views in which the hoops are moved from one extreme position displaying one stone to another extreme position displaying the other stone;

FIG. 4 is a view similar to FIG. 2 showing the piece with fastening means for an earring;

FIG. 5 is a view similar to FIG. 2 showing the piece as used for a pendant;

FIG. 6 is a view similar to FIG. 2 showing an arrangement for using the piece as a stick pin.

### DETAILED DESCRIPTION OF THE INVENTION

Referring to the drawings and particularly to FIGS. 1–3, the jewelry piece according to the invention has a

2

central setting 10 which can be, for example, a wire hoop or solid member of desired shape and size. The various parts of the jewelry piece can be of any precious, semi-precious or non-precious materials, e.g., gold, silver, various alloys, etc. The type of material used for the setting and other parts of the jewelry piece are not critical to the invention.

Mounted within the setting 10 is a dual display item formed by two parts 12-1 and 12-2, here illustratively gems or diamonds. The display parts 12-1, 12-2 can be fused or joined together by any suitable arrangement, e.g., an adhesive. Alternatively, they can be held together within the setting 10 by making the central hoop portion 10 thereof wide enough. The type, size and shape of the display item 12 used also is not critical to the invention. As seen in FIGS. 1, 2A and 2B, the part 12-1 is a gemstone of elliptical shape wherein part 12-2 is one of square shape. The setting 10 is modified to accommodate the size and shape of the display items 12.

The piece includes a pair of hoops 14-1 and 14-2 of similar construction. Each hoop 14 has a pair of truss members (FIG. 2A) 16 at the top thereof which are formed by straight pieces 17 and an angled piece 18. Each of the members 17, 18 forming each of the trusses 16 is suitably affixed to the hoop 14, for example, by soldering. Illustratively shown in FIG. 2B, each of the trusses can have a baguette 19 mounted to it to cover the truss and to further enhance the beauty of the jewelry piece.

The end, or peak, 20 of each truss, where members 17, 18 are joined together, is pivotally connected to the central setting 10 of the ring (see FIG. 3). That is, each of the peaks 20 of each of the trusses 16 is attached to the central setting support 10 so that it can be pivoted thereto. This can be accomplished, for example, by making a wire loop at the end 20 of each truss which pivots on an axle which is fastened to the outside of the central member 10 or directly pivotally connected by a hinge arrangement to the central member. Alternatively, the central setting member 10 can be provided with a curved eye projection, there being a total of four such projections, to which a peak 20 of a truss provided with a closed hook can be attached and can pivot around it.

At the bottom on the opposite vertical faces of each hoop 14 a small magnet piece is mounted. That is, there are four magnet pieces, which can be small dot type magnets. When two opposing magnets of the different hoops come close to each other, they provide a force to hold the hoops together, as shown in FIGS. 3A and 3I. Since the magnets are on the vertical faces of the hoops, they do not extend above or below the internal or external hoop surfaces. If the hoops 14 are of a material which is magnetically attractive, then only one hoop need be provided with the magnet pieces 24 on its opposite vertical faces.

FIG. 3 shows the operative features of the invention. In FIG. 3, the two hoops 14-1 and 14-2 are placed adjacent to each other. If the hoops comprise rings, then the jewelry piece can be placed over one of the fingers of a user and the jewelry item 12-2 would be displayed. If the user wishes to display item 12-1, he or she removes the ring from the finger and pivots the two hoops 14-1 and 14-2 in opposite directions from one side of the jewelry display item 12 to the other. As seen in referring to FIGS. 3B-3I, the two hoops 14-1 and 14-2 are rotated so that to the position shown in FIG. 3I. Here, as

5,353,608

3

can be seen, with the hoops **14-1** and **14-2** being adjacent one another and forming a ring, that the jewelry item **12-1** is now being displayed if the ring is inserted over the finger of the user.

The jewelry piece shown in FIGS. **1–3** as a ring can be adopted to serve other functions. For example, the hoops **14-1**, **14-2** can be made larger to serve as a bracelet.

Also, as shown in FIG. **4**, there are on each of the hoops **14-1** and **14-2** at about a point diametrically opposite the jewelry items **12-1** and **12-2** parts **30–32** for serving as an earring holder. These can be, for example, the usual earring pins which pierce through the ear of the wearer or else a screw-type arrangement. The latter is shown in FIG. **4** as a screw **31** mounted on hoop **15** extension **32** there being a thread receiving member **33** on the extension **34** on the other hoop. The choice of display of items **12-1** or **12-2** is accomplished in the same manner as shown with respect to FIGS. **1–2**.

FIG. **5** shows a further embodiment of the invention **20** wherein the item is used as a pendant. Here, at the part of each of the hoops remote from the jewelry items **12-1** and **12-2** there is a curved portion **30** to accommodate a chain which the user wears around his or her neck. If desired, an arrangement can also be provided for snapping the two hoops together at the points where the projections are present.

FIG. **6** shows a further embodiment of the invention which is modified as a stick pin. Here, the pin **40** is attached to the part of one of the hoops **14** which is **30** remote from the setting **10** and there is a suitable fastening arrangement such as a snap fit **42**, to snap the two together. The magnets **24** of FIGS. **1–3** also can be used.

In any of the embodiments shown in the various figures of the drawings, it should be clear that either one of **35** the jewelry pieces **12-1** and **12-2** can be selectively displayed merely by rotating the two hoops **14** from a position from one side of the setting **10** to a position on the other side of the setting.

It should be understood that any suitable type, size **40** and shape of jewelry piece **12** can be used. This can be,

4

for example, rare or precious stones, synthetic stones, pictures, etc.

What is claimed:

1. A multi-use jewelry device comprising:
setting means for holding first and second separate and different display objects opposite each other and each with a portion thereof extending outwardly of said setting means, and
first and second continuous hoops each with a truss extending radially outwardly therefrom, said trusses being connected to said setting means between the two display objects, each of said hoops is pivotable by substantially 180° in opposite directions above and below said setting means to be adjacent to each other for selectively orienting said first and second display objects for selective display of the extending portion thereof.

2. A device as in claim **1**, wherein the size of said hoops when adjacent one another permits a part of the body to be inserted through said hoops.

3. A device as in claim **2** wherein said hoops are in the shape of rings for a finger to fit therein.

4. A device as in claim **2** wherein said hoops are in the shape of a bracelet.

5. A device as in claim **1** further comprising means on at least one of said hoops for holding said hoops together when they are adjacent each other.

6. A device as in claim **5** wherein said holding means comprises at least one magnet on one of said hoops.

7. A device as in claim **6** wherein there is a magnet on each hoop which coact to hold the hoops together.

8. A device as in claim **1** further comprising cooperating means on said hoops remote from said setting means to fasten said device to an ear as an earring.

9. A device as in claim **1** further comprising stick pin means on at least one of said hoops remote from said setting means and means for holding said hoops together.

10. A device as in claim **1** wherein said setting means comprises at least one wire hoop.

* * * * *

45

50

55

60

65

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 5,353,608                              Page 1 of 1
APPLICATION NO. : 08/002267
DATED                  : October 11, 1994
INVENTOR(S)       : Jeffrey Berkowitz

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On Title page Item 75
Add inventor: Joe Richard Tanory, Jr.

Signed and Sealed this

Eleventh Day of July, 2006

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

US00D374410S

# United States Patent [19]

## Tanory, Jr.

| [11] | Patent Number: | Des. 374,410 |
|---|---|---|
| [45] | Date of Patent: | **Oct. 8, 1996 |

[54] **FINGER RING**

[76] Inventor: **Joe R. Tanory, Jr.,** 512 S. 21st Ave., Birmingham, Ala. 35205

[**] Term: **14 Years**

[21] Appl. No.: **33,213**

[22] Filed: **Dec. 9, 1994**

### Related U.S. Application Data

[63] Continuation of Ser. No. 15,956, Dec. 3, 1993, abandoned.

[52] **U.S. Cl.** ............................................................ **D11/34**
[58] **Field of Search** ............................. D11/26–39, 1–2, D11/77, 79; 63/1.1, 2, 15–15.8

[56]     **References Cited**

#### U.S. PATENT DOCUMENTS

| D. 64,845 | 6/1924 | Feingold et al. | D11/26 |
|---|---|---|---|
| D. 137,409 | 3/1944 | Granat | D11/34 |
| D. 143,297 | 12/1945 | Gantwarg | D11/34 |
| D. 188,805 | 9/1960 | Hoffmann | D11/47 |
| 211,558 | 1/1879 | Edwards . | |
| D. 332,235 | 1/1993 | Bonchek | D11/26 |
| 1,565,651 | 12/1925 | Klass et al. | 63/15.7 |
| 1,586,606 | 6/1926 | Cain | D11/29 |
| 2,177,314 | 10/1939 | Von Dachenhausen | D11/34 |
| 2,585,183 | 8/1949 | Stern . | |
| 3,307,375 | 3/1967 | Estrin et al. . | |
| 3,653,227 | 4/1972 | Ried | D11/27 |
| 4,726,200 | 2/1988 | Carter . | |
| 4,932,396 | 6/1990 | Garris . | |
| 5,353,608 | 10/1994 | Berkowitz | 63/1.1 |

*Primary Examiner*—Ralf Seifert
*Attorney, Agent, or Firm*—Shlesinger Arkwright & Garvey

[57]     **CLAIM**

The ornamental design for the finger ring, as shown and described.

### DESCRIPTION

FIG. **1** is a top perspective view of a finger ring showing my new design;
FIG. **2** is a front elevational view, the opposite side view being the same;
FIG. **3** is a right side elevational view, the opposite side view being the same;
FIG. **4** is a top plan view;
FIG. **5** is a bottom plan view;
FIG. **6** is a side elevational view, shown in a alternate position; and,
FIG. **7** is a top plan view of the ring shown in FIGS. **1–5,** shown in an alternate position.

**1 Claim, 2 Drawing Sheets**



**U.S. Patent**     Oct. 8, 1996     Sheet 1 of 2     **Des. 374,410**





## FIG. 4



## FIG. 1

## FIG. 5





## FIG. 2

## FIG. 3

**U.S. Patent**          Oct. 8, 1996          Sheet 2 of 2          **Des. 374,410**



## FIG. 7



## FIG. 6

**U.S. Patent**          Oct. 8, 1996          Sheet 2 of 2          **Des. 374,410**



FIG. 7



FIG. 6

# Cardow

**SINCE 1894**

1 • 800 • 227 • 3697

Fine Jewelry 40% - 60%
Below Retail Prices

WISH LIST | YOUR ACCOUNT | HELP | 🛍 BAG    0 Items

RINGS | REVERSIBLE RINGS | BRACELETS | EARRINGS | NECKLACES | CHAINS | PENDANTS | MEN'S | CLEARANCE

**Welcome!** Log In or Register for Easier Shopping!

HOME >> REVERSIBLE RINGS

## Reversible Rings

TWO RINGS IN ONE! Simply remove the ring and reverse it! Beautiful Gemstones and sparkling diamonds are centered on a double sided ring in your choice of yellow or white gold. This reversible ring is unique in any stone that you choose. Most rings are also available with larger gemstones.

Find the perfect product or gift with our **PRODUCT FINDER.**

Select a Category
All Materials
Any Price

**REVERSIBLE RINGS**

Aquamarine
Birthstones
Diamond
Emerald
Insert Ring
Opal
Other Gemstones
Peridot
Ruby
Sapphire
Tanzanite
White Gold
Yellow Gold

SHOP BY SALE
— Clearance
—
SHOP BY



▶IT'S A COLORED GEMSTONE!

IT'S A DIAMOND▶

**DIAMOND REVERSIBLE RINGS**

14k Gold Brown Diamond
Reversible Ring
Retail Value $1,575
**Cardow $945.00**
You Save: 40%

**EMERALD REVERSIBLE RINGS**

14k White Gold Emerald &
Diamond Reversible Ring
Retail Value $660
**Cardow $395.00**



**OPAL REVERSIBLE RINGS**

14k Gold Opal & Diamond
Reversible Ring
Retail Value $1,275
**Cardow $765.00**
You Save: 40%

http://www.cardow.com/catalog/category.jsp?categoryId=85

Reversible Rings - Tanzanite, Emerald — Cardow Jewelers — St. Thomas

**PRODUCT**
- Rings
- Reversible Rings
- Bracelets
- Earrings
- Necklaces
- Chains
- Pendants
- Men's

**SHOP BY METALS**
- Sterling Silver
- White Gold
- Yellow Gold

**SHOP BY MATERIAL**
- **GEMSTONES**
- Amethyst
- Aquamarine
- Blue Topaz
- Citrine
- Diamond
- Emerald
- Garnet
- Mystic Topaz
- Onyx
- Opal
- Other Gemstones
- Pearl
- Peridot
- Ruby
- Sapphire
- Tanzanite

**EMAIL SIGNUP & CATALOG REQUEST**





You Save: 40%

**TANZANITE REVERSIBLE RINGS**



14k White Gold Tanzanite & Diamond Reversible Ring
Retail Value $1,360
**Cardow $815.00**
You Save: 40%

**CARDOW PREFERRED CUSTOMER ACCOUNT**

90 days same as cash
Apply today and start saving

CLICK HERE TO APPLY

**RUBY REVERSIBLE RINGS**

14k Gold Ruby & Diamond Reversible Ring
Retail Value $660
**Cardow $395.00**
You Save: 40%

**JEWELRY KNOWLEDGE**
Learn more...

**APPRAISAL POLICY**
Learn more...

**CUSTOMER REVIEWS**
Our Customers Say...

**SAPPHIRE REVERSIBLE RINGS**

14k White Gold Sapphire & Diamond Reversible Ring
Retail Value $1,660
**Cardow $995.00**
You Save: 40%

**GIFT CARD**
Order gift cards in any amount for your online purchases.




BUY NOW





Since 1975

GIA

Site Map | About Us | Privacy Policy | Contact Us | Resources | Become An Affiliate

Customer Service: Mon-Fri 9:00 AM to 5:00 PM AST | Order: 24/7 1.800.227.3697 | ©2007 Cardow



**14K WHITE GOLD TANZANITE & DIAMOND REVERSIBLE RING**
Retail Value  $1360
Cardow  $815.00



CLOSE WINDOW







